UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANY ZAMORA-SMITH,<br><br>Petitioner,<br><br>v.<br><br>D. DAVIES, Warden,<br><br>Respondent. | NO. CV 14-6032-GW (AGR)<br>NO. CV 15-0782-GW (AGR)<br><br>ORDER ACCEPTING FINDINGS<br>AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE<br>JUDGE |
| MICHAEL LEVETTE RANDOLPH,<br><br>Petitioner,<br><br>v.<br><br>JEFF MACOMBER, Warden,<br><br>Respondent. | |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petitions, the other records on file herein, and the Report and Recommendation of the United States Magistrate Judge. Petitioners have not filed any Objections to the Report. The Court accepts the findings and recommendation of the Magistrate Judge.[1]

---

[1] The Court notes the following corrections. On page 3, line 12, the word "trial" should read "trial court"; on page 13, line 7, the word "Jackson" should be italicized; on page 15, line 19, the word "a.m." should read "p.m."; on page 19, line 25, the word "of" should read "or"; on page 32, line 7, the word "that" should

After the Report was issued, the Supreme Court decided *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). The Court noted that "[a] general rule has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations. This principle, itself centuries old, is often referred to as the no-impeachment rule." *Id.* at 861. The Court addressed the question of whether there is an exception to the no-impeachment rule when a juror comes forward after the verdict with compelling evidence that another juror made clear statements indicating that racial animus was a significant motivating factor in his or her vote to convict. *Id.*

The Supreme Court reviewed its prior decisions. In *Tanner v. United States*, 483 U.S. 107 (1987), cited in the Report, the court received information that several jurors consumed alcohol during some lunch breaks and/or used drugs during trial. The Supreme Court held that an inquiry into juror intoxication was barred under Fed. R. Evid. 606(b) and that the district court did not err in deciding a post-verdict evidentiary hearing was unnecessary. *Id.* at 125-27. In *Warger v. Shauers*, 135 S. Ct. 521 (2014), a civil case, the Supreme Court held that Rule 606(b) barred a party from using a juror affidavit about what another juror said during deliberations to show the other juror's dishonesty during voir dire. *Id.* at 525. In a footnote, the Court noted that "[t]here may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged." *Id.* at 529 n.3.

The Court in *Peña-Rodriguez* then addressed the question that its precedents had "left open": "whether the Constitution requires an exception to the no-impeachment rule when a juror's statements indicate that racial animus was a significant motivating factor in his or her finding of guilt." *Peña-Rodriguez*,

---

read "it"; and on page 33, line 13, the word "follow" should be inserted before "the rules."

2

137 S. Ct. at 867. The Court distinguished racial bias from the other types of behavior at issue in prior precedents. "The behavior in those cases is troubling and unacceptable, but each involved anomalous behavior from a single jury – or juror – gone off course. Jurors are presumed to follow their oath, and neither history nor common experience show that the jury system is rife with mischief of these or similar kinds. To attempt to rid the jury of every irregularity of this sort would be to expose it to unrelenting scrutiny. 'It is not at all clear . . . that the jury system could survive such efforts to perfect it.'" *Id.* at 868 (citation omitted). By contrast, racial bias risks "systemic injury to the administration of justice." *Id.*

The Court held that when "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Id.* at 869. Even in the case of racial bias, however, "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry. For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence." *Id.*

The Court decided that it "need not address" the question of "what procedures a trial court must follow when confronted with a motion for a new trial based on juror testimony of racial bias." *Id.* at 870. "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by

3

state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.* at 869. The Court also did not decide the appropriate standard for determining when evidence of racial bias is sufficient to require that the motion for new trial be granted. *Id.* at 870.

Here, the jury commenced deliberations on Thursday, March 17, 2011 at 9:40 a.m. (13 RT[2] 7201, 7234.) The jury continued deliberations on Friday, March 18. (*Id.* at 7501.) At 3:32 p.m., the jury sent out a note. (Lodged Document ("LD") 17 at 105.) The note read: "We would like to speak with your honor regarding our ability to reach a v[e]rdict. [¶] In terms of the firearms charge for Smith does a "Principal" include an aider and abettor?" (*Id.* at 109 (block capital letters omitted).) The court answered "yes" to the question about the firearms charge. (*Id.*) The California Court of Appeal found:

> According to the declaration of Zamora-Smith's trial counsel submitted in support of a petition for disclosure of juror information, the trial court had the bailiff tell jurors they would return on Monday to continue deliberations. The bailiff then told the court that the foreperson, Juror No. 2 or 8,[3] could not come back on Monday due to a flight out of town, which the juror had not mentioned during voir dire. The bailiff told the jurors they had to come back on Monday. Less than a minute later, the jury rendered its guilty verdicts. The clerk's transcript shows that the jury informed the court it had reached a verdict at 3:50 p.m., 18 minutes after sending the note.

---

[2] "RT" refers to the Reporter's Transcript. As in the Report, this Court cites the lodged documents in the *Randolph* action.

[3] The foreperson was Juror No. 7. (13 RT 7241.)

4

After the verdict was rendered, defense counsel spoke to several jurors, "many" of whom were "visibly upset and emotional." One juror hoped that the case would be reversed on appeal and said he was uncomfortable with how the deliberations were rushed at the end. He felt pressured into rendering a verdict.

Zamora-Smith, joined by Randolph, then petitioned the court for disclosure of juror information. Defense counsel argued that the sequence of events suggested that undue pressure was exerted on holdout jurors. A couple of jurors said that when the note was sent out, the "spread" was seven-to-five in favor of guilt. Counsel therefore asked for an opportunity to explore whether there was undue pressure placed on jurors by the foreperson.

The trial court noted that the jurors did not hesitate during polling and that what counsel was seeking fell within the protections of Evidence Code section 1150, subdivision (a), concerning the mental processes of the jurors. Finding no indicia of misconduct, the trial court found there was no good cause to release the information.

(LD 8 at 20-21; LD 17 at 105-06; LD 18 at 5-6; 13 RT 7511-12, 8105.)

Petitioners' request for juror contact information was made to enable counsel to present evidence about the jury's internal deliberations and each juror's mental processes concerning the verdict. As the Report noted, the Supreme Court has not addressed whether there is a constitutional right to access to jurors' personal contact information. *See Pha v. Swarthout*, 658 Fed. Appx. 849, 851 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 658 (9th Cir. Jan. 9,

5

2017). Nor have Petitioners established a viable basis for the request. Even assuming that the Supreme Court's recent decision in *Peña-Rodriguez* could be considered on federal habeas review, the facts of this case do not rise to the level of racial bias. The Supreme Court has not established an exception to the no-impeachment rule for the type of misconduct alleged – rushed deliberations on a Friday afternoon when one juror claimed to have a flight and did not want to return on Monday. *See Young v. Davis*, 860 F.3d 318, 333-34 (5th Cir. 2017) (declining to extend *Peña-Rodriguez* to a claim that some jurors believed they all had to agree on what evidence was mitigating). The type of misconduct alleged here is more akin to juror intoxication or juror dishonesty in voir dire that the Supreme Court has found did not warrant invading the jury's internal deliberations.[4]

IT IS ORDERED that judgment be entered denying the Petitions and dismissing these actions with prejudice.

DATED: Aug. 23, 2017

GEORGE H. WU
United States District Judge

---

[4] Petitioner's allegations do not involve outside influence on a jury. *See Tanner*, 483 U.S. at 121-25. This is not a case involving communication with a juror from an outside person. *See Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc) (motion to stay issuance of mandate pending petition for writ of certiorari granted).

6